## Brittain v. Campbell.

(Decided Dec. 9, 1938.)

784 ·

H. H. OWENS for appellant.

J. J. TYE for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Affirming.

This litigation involves the title to a small tract of
land in Knox County containing about 25 acres. The
appellee, plaintiff below, claims to have purchased this
land at decretal sales wherein he purchased the one-
third undivided interest of Joe Campbell and the two-
thirds undivided interest of Sade and Rachel Campbell.
The record shows Joe, Sade and Rachel were three of
the children of Jesse and Sallie Campbell. It appears
Sallie owned a one-third undivided interest in a tract of
land containing 135 acres and her husband, Jesse,
bought the other two-thirds from Hiram Miller, October
7, 1851.

Jesse and Sallie had four children; Eliza, Joe, Sade
and Rachel. Eliza, the eldest child, married John Hel-
ton and it is not necessary to go into detail as to how
she acquired 50 acres of this Miller land from her par-
ents. After Jesse's death, his widow, Sallie and their
three unmarried children, Joe, Sade and Rachel, con-
tinued to occupy the land bought from Miller and lived
together thereon as one family.

Alex Helton was a grandson of Sallie, and we pre-
sume a son of Eliza, and Sallie practically raised him.
Some 40 or 50 years ago Sallie built a house for him on
the land in dispute, which plaintiff contends was a part
of the land bought from Miller, and put him in posses-
sion thereof and Alex lived in this house and on the
land in dispute until his death in 1920, and his widow,
Mary, continued to live on this land until her death in
1934. It is the contention of the plaintiff, Campbell,
that Alex held this land as the tenant of Sallie as long
as she lived and after her death he held it as the tenant
of her children, Joe, Sade and Rachel, but it is admitted
that none of them ever charged Alex rent.

The appellant, the defendant below, claims title to
this land through his father, James P. Brittain, who in-
herited it from his father, Archibald Brittain, and

Archibald purchased it January 15, 1880, from Luke Foley and his wife. Defendant contends that Alex did not hold this land as tenant of Sallie Campbell, or of her three children, Joe, Sade and Rachel, but that Alex held it adversely to all the world, therefore, the plaintiff, John W. Campbell, obtained no title to the land occupied by Alex when he bought the lands of Joe, Sade and Rachel which they inherited from their parents, Jesse and Sallie Campbell, and as plaintiff had no title to this land he could not maintain this action to enjoin defendant from entering upon same. Shortly before the death of Mary, the widow of Alex Helton, the defendant, Brittain, attempted to purchase the land in dispute from Mary for $25 and she executed to him a deed therefor on September 24, 1934. The defendant further contends that in a suit between Sallie Campbell and his father, James P. Brittain, a judgment was entered in 1899, fixing the boundary between Sallie Campbell and James P. Brittain which adjudged Sallie took no interest in a tract of land known as the Parson tract containing 100 acres; and as the land now in dispute is a part of that Parson tract, this judgment estops plaintiff from claiming Alex held the land in controversy as the tenant of Sallie or of her three children, Joe, Sade and Rachel.

This is a fact case and there is no controversy between the litigants as to the law. If the evidence shows Alex Helton held this land adversely to Sallie Campbell and adversely to Joe, Sade and Rachel Campbell, then the plaintiff loses his case and the judgment of the lower court must be reversed, as plaintiff's only claim to this land is by purchasing the interest Joe, Sade and Rachel had therein. Therefore, we must turn to the record and ascertain what the witnesses say as to how Alex held this land. Since this evidence is neither short nor concise, we will not attempt to discuss the testimony of each witness but only those on both sides whose evidence we consider material.

The plaintiff, Campbell, testified he knew Mary Helton was in possession of this land when he bought it but he did not know she was claiming title to it until the defendant, Brittain got his deed acknowledged, which was after plaintiff purchased the land; he further testified that neither Alex nor Mary ever listed this land for taxation. R. H. Harkleroads testified he went to Alex's home in 1909, for the purpose of buying hogs and upon

complimenting him on his farm, he was told by Alex that the place did not belong to him but was the property of the Campbell heirs.

Levi Helton, a nephew of Alex, testified Alex never claimed this land, and in the presence of his wife, Mary, he told the witness the place belonged to the Campbells, to which Mary registered no objection. J. W. Helton, a brother of Alex, testified that his grandmother was afraid somebody would claim this land and she moved Alex thereon; that it had been 47 years since Alex moved on this land; that he heard Sade and Rachel say they were going to let Mary sell some of the timber to pay Alex's funeral expenses; that he had heard the Campbells say what they would let Alex do and what they would not let him do concerning this land. Pleas Helton, a deputy sheriff, testified that Mary Helton was in custody charged with selling homebrew and she was having some trouble executing a bond. He advised her to execute a mortgage on her home and she replied to him that she did not own it. F. M. Matlock testified he worked for Alex some every spring for 15 years and Alex never claimed to own this land; that he tried to buy some timber from Alex and his reply was that Sade and Joe would not let timber be moved off the place. Some three or four years before Alex's death he executed a deed to his wife, Mary, conveying her all his property which consisted of a small tract of land on Middle Fork (not the land in question), "a mare, two cows, a calf and a bunch of bee gums."

The defendant, Brittain, testified his father's home-place was on this Parson tract which had been inclosed by a fence for many years; that his father brought suit to dispossess Alex, since the land Alex was occupying lay within the Parson tract, but as his father had married Alex's sister he did not prosecute the suit and Alex remained on the land; that the fence inclosing Alex's land extended down into this Parson tract, but in dividing the land of his father, James P. Brittain, among his heirs and allotting dower to the widow, no effort was made to include in that division the land Alex was occupying; that he had bought some timber off this land from Alex. John Y. Campbell testified Alex's house was on this Parson land; that W. H. Campbell, the father of plaintiff, was the administrator of James P. Brittain and would not lay off to the widow as dower any part of the land Alex claimed. Mr. John Y. Camp-

bell further testified he had heard Alex from 1903 to 1906 claim this land as his own and that Alex's fence dropped down south of the Parson line and went almost to the graveyard. Bessie Foley said Mary Helton, Alex's widow, wanted to deed this land to her and that she also heard the Campbells claim it. Joe Foley said Alex claimed above the fence and Brittain below it; and K. Triplett said Mary told him in 1903 she owned this land.

The learned Chancellor, who tried this case, found:

"That Alex Helton and Mary Helton occupied and used the property in controversy herein as the tenants of Sallie Campbell and Sallie Campbell's heirs for more than forty years, to a well marked and defined boundary, the southern and western line of which was recognized by Sallie Campbell and J. P. Brittain, predecessors in title of the parties litigant in this action."

A careful reading and consideration of this record leaves no doubt in our minds but that he was correct. The judgment in the suit of Sallie Campbell against James P. Brittain entered in 1899, and upon which defendant relies to estop plaintiff from claiming any of this land Alex occupied south of the northern boundary of the Parson tract, does say Sallie Campbell recovered no part of the Parson tract; but this judgment further recited the division line between Sallie Campbell and Brittain shall control "until it gets to the fence of Sallie Campbell and shall then run with the fence as it now runs the courses around to this line again." This was evidently the fence Alex had extended down in the Parson tract as the tenant of Sallie Campbell and it is seen the judgment in 1899 recites the boundary line between Sallie Campbell and James Brittain when it reached this fence should deviate and follow the fence until it came back to the original boundary line.

However, if this should not be the correct interpretation to put on this judgment entered in 1899, the plaintiff, Campbell, still prevails in this action for the following reasons: If the judgment entered in 1899 adjudged Sallie Campbell did not take that part of the Parson land Alex had inclosed with his fence, Sallie and her three children, Joe, Sade and Rachel, through Alex as their tenant, held adversely to James P. Brittain and his heirs, regardless of this judgment, from 1899 until Alex's death in 1920 and from 1920 they held it adverse-

788

ly to the Brittains through Mary Helton as their tenant until her death in 1934. This makes a total period of about 35 years Sallie Campbell and her three children held this land adversely to James P. Brittain and his heirs after the judgment was entered in 1899. Under section 2505 of the Kentucky Statutes, this gave title to Sallie Campbell and her three children by adverse possession.

George A. Brittain took no title to this land by virtue of the deed Mary Helton executed to him on September 24, 1934. Even if Brittain were correct in his contention that Alex Helton became the owner of this land by holding the same adversely to all the world for more than 15 years, his widow, Mary, when he died intestate, only took a life estate in the land and this was all she could have conveyed to Brittain; and if she had inherited a life estate in this land, it would have been extinguished by her death.

We agree with the conclusion reached by the Chancellor; therefore, the judgment is affirmed.